**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JENNIFER M. YOUNG**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General

**ROBERT J. HENKE**
Deputy Attorney General

**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE MATTER OF:<br>K.J.W. (MINOR CHILD), A CHILD IN NEED<br>OF SERVICES<br><br>AND<br><br>A.L.W. (MOTHER)<br><br>    Appellant-Respondent,<br><br>        vs.<br><br>THE INDIANA DEPARTMENT OF CHILD<br>SERVICES,<br><br>    Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 02A03-1405-JC-158<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
The Honorable Lori K. Morgan, Magistrate
Cause No. 02D08-1310-JC-363

**November 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

A.L.W. (Mother) appeals the juvenile court's order adjudicating her child, K.J.W. (Child), a Child in Need of Services (CHINS). On appeal, Mother argues that the juvenile court's order was not supported by sufficient evidence.

We affirm.

Mother gave birth to Child in July 2013. Mother also has two older children, Ka.W., born in May 2010, and Ke.W., born in September 2011 (collectively, Siblings). About a month prior to Child's birth, Siblings were adjudicated CHINS under separate cause numbers. Siblings were placed in Mother's care, provided that Mother and Siblings resided with Mother's aunt (Aunt). In conjunction with those CHINS cases, Mother was ordered to submit to a diagnostic assessment and follow all recommendations and to participate in home-based services, individual counseling, and parenting classes.

Shortly after his birth, Child was hospitalized at least twice due to respiratory problems. Due to his significant medical problems, Child was required to wear a heart monitor at all times and he received breathing treatments four times per day. Pat Geimer, a provider of home-based services, was present when medical personnel delivered the heart monitor and nebulizer and provided training on how to use them to Mother and Aunt in Aunt's home. Geimer observed that Aunt was more involved in the training than Mother. Mother was very frustrated with trying to keep the heart monitor on Child, and Geimer saw Mother turn the monitor off because she was annoyed by the noise it made.

On September 19, 2013, Mother and Aunt got into an argument and Aunt asked Mother to leave. Mother contacted Family Case Manager (FCM) Brianna Norris and said that she could no longer live with Aunt and that she was going to a shelter. FCM Norris

told Mother that she could not remove Siblings from Aunt's residence without going to court first. When Mother asked about leaving with Child, FCM Norris told her that the Department of Child Services (DCS) could not stop her because it did not have wardship over Child.

Nevertheless, Mother left Aunt's home that day with all three children, and she did not take Child's nebulizer or heart monitor with her. Although Aunt believed Mother was going to stay with a friend, Mother actually hitched a ride with a truck driver, with all three children in tow. Mother had wanted to go to Florida, but the truck driver would only take her as far as Columbus, Ohio. Mother knew no one in Columbus and she and the children stayed in a homeless shelter. Through a program at the shelter, Mother was able to obtain an apartment and part-time work. Mother did not communicate with DCS or inform them of her whereabouts.

Meanwhile, DCS attempted to locate Mother in order to ensure the welfare of all three children, but was unsuccessful. As a result, on November 5, 2013, the juvenile court found probable cause to believe that Child was a CHINS, authorized DCS to file a CHINS petition, and ordered that when Child was located, he was to be placed in licensed foster care.

After receiving a report, DCS was able to locate Mother in Columbus on January 7, 2014, and all three children were removed. On January 9, 2014, FCM Norris traveled to Columbus to retrieve the children and speak to Mother and view her home. At that time, Mother did not have a heart monitor or nebulizer for Child. She did, however, produce an inhaler that she claimed belonged to Child, who was less than six months old

3

at the time. Mother did not have a prescription for the inhaler. Mother told FCM Norris that she had taken Child to the doctor, but did not provide a name or any further information. At the time he was removed, Child was covered head to toe in a rash that had scabbed over in places and caused him obvious discomfort. Mother told FCM Norris that she thought the rash was caused by laundry detergent and that she had not sought medical attention for it. After his removal, Child required medical treatment for the rash.

The fact-finding hearing on the CHINS petition was held over February 25, 26, and 27, 2014. At the conclusion of the hearing, the juvenile court took the matter under advisement. The juvenile court issued its order adjudicating Child a CHINS on February 28, 2014. A dispositional hearing was held on March 13, 2014, and a dispositional order was entered on April 16, 2014. Mother now appeals.

On appeal, Mother argues that the CHINS adjudication is not supported by sufficient evidence. Where, as here, a juvenile court enters findings of fact and conclusions of law in support of its CHINS determination, we apply a two-tiered standard of review. *Parmeter v. Cass Cnty. DCS*, 878 N.E.2d 444 (Ind. Ct. App. 2007). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* While we defer to the juvenile court's findings of fact, we do not do so to its conclusions of law. *Id.* Additionally, we will not reweigh

4

the evidence; rather, we consider the evidence favorable to the judgment and draw all reasonable inferences in favor of the judgment. *Id.*

In this case, the DCS alleged that Child was a CHINS pursuant to Ind. Code Ann. § 31-34-1-1 (West, Westlaw current with all 2014 Public Laws of the 2014 Second Regular Session and Second Regular Technical Session of the 118th General Assembly), which provides that a child under eighteen years of age is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

> (2) the child needs care, treatment, or rehabilitation that:
>     (A) the child is not receiving; and
>     (B) is unlikely to be provided or accepted without the coercive intervention of the court.

"Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010).

On appeal, Mother argues that DCS presented insufficient evidence to establish that Child needed care, treatment, or rehabilitation that he was not receiving. *See* I.C. § 31-34-1-1(2)(A).[1] Specifically, Mother challenges the juvenile court's finding that Mother failed to provide Child with necessary medical care. Mother argues that there was no evidence presented that Child needed a nebulizer or heart monitor. Mother's argument seems to be premised on the fact that no physician or medical professional testified to these facts. While the testimony of a medical professional in this regard might

---

[1] Mother makes no independent argument that I.C. § 31-34-1-1(2)(B) was not satisfied.

have been helpful, Mother has not directed our attention to any authority suggesting that it was required. Aunt, who was very involved in Child's care before Mother left her home, testified that Child needed breathing treatments four times a day and that he was required to wear the heart monitor at all times. Additionally, Geimer was at the residence when a representative from Parkview Hospital delivered the equipment and instructed Mother and Aunt on how to use it. This evidence is sufficient to establish that Child had been prescribed the nebulizer and heart monitor.

Mother also argues that the evidence is insufficient to establish that Child was not receiving appropriate medical care because "DCS did not present and [sic] evidence to establish that Mother did not immediately obtain new equipment upon leaving her Aunt's home or relocating from Ohio." *Appellant's Brief* at 11. Mother also argues that there is no evidence that Child continued to need a nebulizer or heart monitor after she left Aunt's house or at the time of his removal or the fact-finding hearing. These arguments are simply requests for us to draw inferences unfavorable to the judgment. Aunt testified that as of the date Mother took the children and left her home, Child was still using the nebulizer and heart monitor, and that Mother did not take the equipment with her because "everything was so hectic and so hurried[.]" *Transcript* at 92. It was therefore reasonable for the juvenile court to infer that Child still needed the equipment after Mother left Aunt's house. After leaving Aunt's residence, Mother and all three children hitchhiked to Columbus, where they stayed in a homeless shelter before Mother obtained an apartment with the assistance of the shelter. When Mother was finally located by DCS, she was not in possession of a heart monitor or nebulizer for Child, although she

6

did produce an inhaler she claimed belonged to Child. There was no indication that a doctor had prescribed the inhaler for Child, who was less than six months old at the time. Under these facts and circumstances, it was reasonable for the juvenile court to infer that Mother did not obtain a new heart monitor and nebulizer for Child immediately after leaving Aunt's home.

Moreover, while evidence might not have been presented to conclusively establish that Child still needed the heart monitor and/or nebulizer on the date of his removal, FCM Norris testified that on the day she picked Child up, he was covered head to toe in a rash. The rash was scabbed over in places, caused Child obvious pain, and required medical treatment. Nevertheless, Mother told FCM Norris that she believed the rash was caused by laundry detergent and that she had not sought medical attention for Child. Moreover, even if we assume that Child's immediate health concerns had been resolved by the time of the fact-finding hearing (i.e., after his removal from Mother's care), he, like all infants, was still in need of ongoing, routine medical care and a caregiver appropriately responsive to possible medical issues as they arise. Mother's historical pattern of neglecting Child's medical needs was sufficient to support a conclusion that Mother would be unable or unwilling to ensure Child received the necessary care. This evidence was also sufficient to establish that Mother's medical neglect posed a serious, ongoing threat to Child's well-being.

Mother also seems to suggest that the trial court's findings concerning her history of housing instability are unsupported by the evidence. Specifically, Mother points out that at the time of the fact-finding hearing, she had maintained her own residence for

approximately five months. This is nothing more than a request to reweigh the evidence. The evidence presented at the hearing established that prior to moving in with Aunt, Mother was homeless. When Mother left Aunt's house, she told FCM Norris that she was going to a shelter. After she hitched a ride to Columbus, Mother stayed with the children at a shelter before obtaining an apartment through a program with the shelter. Although Mother had maintained her apartment for several months by the time of the fact-finding hearing, this does not negate her history of housing instability. The juvenile court's findings in that regard are supported by the evidence. We note further that the juvenile court specifically found that Mother had maintained an apartment for several months. It is therefore clear that the court took her current housing situation into consideration when rendering its judgment.

Under a separate issue heading, Mother also argues that the juvenile court's findings concerning her history with DCS pertaining to Siblings' CHINS adjudications are irrelevant. We disagree. In those cases, Mother admitted that Siblings were CHINS due to her need for parenting classes, therapy, and independent living instruction. These needs are just as relevant to Mother's ability to care for Child as they are to her ability to care for Siblings. Nevertheless, Mother failed to complete any services geared toward meeting these needs. Moreover, Mother's CHINS history, including her past homelessness and decision to leave Indiana with Siblings in violation of a court order, supports the juvenile court's finding that Mother has "a history of unstable housing and/or employment and a history of poor and/or impulsive decision making." *Appellant's Appendix* at 15. Mother's past failure to complete court-ordered services is

also relevant to the juvenile court's conclusion that Mother would be unwilling to accept treatment or rehabilitation without the coercive intervention of the court. For all of these reasons, we conclude that the juvenile court's CHINS adjudication is supported by sufficient evidence.

Judgment affirmed.

VAIDIK, C.J., and MAY, J., concur.